IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARY A. GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 05-3273 |
| | ) | |
| ILLINOIS STATE POLICE; ILLINOIS | ) | |
| STATE POLICE ACADEMY | ) | |
| COMMANDER CARL J. WEITZEL; | ) | |
| STATE TROOPERS ERIC HELTON, | ) | |
| MICHAEL SEVERINO, BRIAN | ) | |
| WILHAM, AND SARA WILLMAN; | ) | |
| AND STATE POLICE CADETS | ) | |
| BONITA PALMER AND STACIE | ) | |
| NEISLER, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge

### FACTS

Plaintiff Mary Garcia wanted to be a trooper with Defendant Illinois State Police ("ISP"). She began attending the ISP Academy on January 4, 2004. While there, Garcia—who is Hispanic and thinks

1

herself to be of Navajo Indian descent—allegedly experienced race, gender, and national origin discrimination from cadets Bonita Palmer and Stacie Neisler, instructors Eric Helton, Michael Severino, Brian Wilham, Sara Willman (Cox), and Illinois State Police Commander Carl J. Weitzel (individually "Palmer", "Neisler", "Helton", "Severino", "Wilham", and "Willman" or collectively the "Defendants"). Garcia also witnessed others being subjected to unlawful discrimination.

After Garcia complained about what she experienced and saw, the Defendants retaliated against her and ultimately terminated her on January 14, 2004. Her termination followed an allegedly sham pretermination hearing wherein she was ridiculed.

Garcia has sued the Defendants for a variety of constitutional deprivations. The Defendants moved the Court to dismiss Garcia's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Garcia failed to timely respond, but the Court ultimately granted her leave to file a response.

## STANDARDS OF REVIEW

Where a defendant challenges the sufficiency of the allegations of subject matter jurisdiction in a Rule 12(b)(1) motion to dismiss, a district court must accept as true all well-pled allegations of a complaint, drawing all reasonable inferences in the plaintiff's favor. See United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996). However, if the motion denies the truth of the jurisdictional allegations, a court may weigh the evidence in order to determine whether jurisdiction exists. See Bd. of Trs. of Pipe Fitters' Welfare Fund Local 597 v. Adams, 1998 WL 259543, No. 97 C 5592, at *2 (N.D.Ill. May 7, 1998). Thus, in the case of a factual attack, "the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed.Cir. 1993) (internal citations omitted).

The plaintiff bears the burden of demonstrating subject matter jurisdiction. Sapperstein v. Hager, 188 F.3d 852, 855 (7th Cir. 1999). When a defendant moves for dismissal pursuant to Rule 12(b)(1), the plaintiff must support its allegations with competent proof of jurisdiction.

See Thomson v. Gaskillwsa, 315 U.S. 442, 446 (1942). Competent proof is "proof to a reasonable probability that jurisdiction exists." See Target Market Publishing, Inc. v. ADVO, Inc., 136 F.3d 1139, 1142 (7th Cir. 1998). A "district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993) (per curiam) (quoting Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir. 1979)).

When considering a motion to dismiss under Rule 12(b)(6), a court views all facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff. Autry v. Nw. Premium Servs., Inc., 144 F.3d 1037, 1039 (7th Cir. 1998). A court will allow a Rule 12(b)(6) motion to dismiss only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Chaney v. Suburban Bus Div., 52 F.3d 623, 627 (7th Cir. 1995) (quoting

Fed.R.Civ.P. 12(b)(6)).

## ANALYSIS

*A. Rule 12(1) Issues*

In Count V of her complaint, Garcia tries to advance her USERRA claim by arguing that the deprivation of a USERRA right creates a cognizable action claim under 42 U.S.C. § 1983. The Second Circuit addressed an identical assertion in <u>Morris-Hayes v. Board of Educ. of Chester Union Free School Dist.</u>, 423 F.3d 153, 159 (2d Cir. 2005). The court determined that USERRA's comprehensive remedial scheme prevented a plaintiff from advancing a separate § 1983 action based on the denial of any right created by USERRA. <u>Id.</u> at 160. The court held that § 1983 could not be used to redress a USERRA deprivation. <u>Id.</u> at 159. This Court agrees with the Second Circuit's reasoning and conclusion. Accordingly, Garcia's USERRA claim will be dismissed for lack of subject matter jurisdiction.

Due to Eleventh Amendment immunity, Garcia's official capacity claims must also be dismissed for lack of subject matter jurisdiction. The

Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by the Citizens and Subjects of any Foreign State." U.S. Const., amend. 11.  The Supreme Court has consistently held that the Eleventh Amendment extends to suits filed by a citizen in federal court against his own state.  See, e.g., Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

Because the ISP is a state agency, it is treated as the state for purposes of the Eleventh Amendment.  See, e.g., Kroll v. Bd. of Trustees of Univ. of Ill., 934 F.2d 904, 907 (1991).  The State of Illinois, the ISP, and the individual Defendants cannot ordinarily be sued in their official capacity for damages under 42 U.S.C. §§ 1981 or 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64-71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Hearne v. Board of Educ. of City of Chicago, 185 F.3d 770, 776 (7th Cir. 1999); Brown v. Budz, 398 F.3d 904, 918 (7th Cir. 2005) (suits against persons in their official capacities are, for all

intents and purposes, suits against the state and are barred by the Eleventh Amendment).

There are exceptions to a state's Eleventh Amendment immunity. Congress may abrogate the states' immunity or a state may waive its immunity and consent to suits by private citizens. See Kimel, 528 U.S. at 73, 120 S.Ct. 631. As there has not been an abrogation or consent, Garcia's only avenue for relief is via Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under Ex Parte Young, a plaintiff can sue state officials in their official capacities for prospective relief to enjoin ongoing violations of their federal rights, notwithstanding Eleventh Amendment immunity. See, e.g., Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 912 (7th Cir. 2003).

Garcia argues that she suffers ongoing Fourteenth Amendment deprivations in that she cannot serve as an ISP officer, she is impeded from working in her chosen field, she suffers financially, and she has been defamed[1]. Garcia contends that these injuries result from her decision to

---

[1] Garcia has conceded that she has no Fourteenth Amendment property right to a position with the ISP. See Pl.'s Opp. to Defs' Partial Mot. to Dis. (d/e 27) at p. 2 (citing Heck v. City of

7

exercise her First Amendment rights. Specifically, she claims the Defendants retaliated against her because she commented on matters of public concern and discriminated against her because of her racial and national origin.

There are many problems with Garcia's claims of ongoing constitutional deprivations. For instance, Garcia's claim of an ongoing procedural due process deprivation fails under Sonnleitner v. York, 304 F.3d 704, 718 (7th Cir. 2002). In Sonnleitner, the Seventh Circuit held that a plaintiff could not allege an ongoing violation by claiming that he has been dismissed or demoted in violation of his procedural due process rights. Id. The Court reasoned that "the violation was not the demotion as such, but, instead, the fact that the demotion occurred without an adequate opportunity to be heard." Id. Thus, the plaintiff could not use his demotion to establish an ongoing violation of his procedural due process rights. Id. In view of Sonnleitner, the denial of Garcia's right to

---

Freeport, 985 F.2d 305, 310 (7th Cir. 1993)(property interests in the employment context arise in two ways: by an "independent source such as state law securing certain benefits," or by a "clearly implied promise of continued employment.")).

a pre-termination or post-termination hearing cannot give rise to a procedural due process claim under Ex Parte Young.

Garcia's assertions of other ongoing constitutional deprivations are also contradicted by the facts. Garcia's pleadings allege deprivations of her Fourteenth Amendment liberty interests and her First Amendment rights, but those deprivations ended when she left the ISP. From that point forward Garcia had a claim for damages, not one for ongoing constitutional deprivations. Garcia's failure to offer legal authority to show her injuries are ongoing constitutional deprivations is, perhaps, a tacit acknowledgment of this flaw. See Pl.'s Opp. to Defs.' Partial Mot. to Dis. (d/e 27) at pp. 4-6.

In any event, the omission of supporting authority violates Local Rule 7.1(B)(1)and is another basis for dismissing Garcia's claims of ongoing constitutional injuries. F.T.C. v. Bay Area Business Council, Inc., 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules . . . we have consistently upheld the district court's discretion to require strict compliance with those rules."). The Court

warned Garcia of such a possibility in its March 24, 2006, Opinion.  See d/e 32.  For all these reasons, the Court will dismiss the claims Garcia advances against the Defendants in their official capacities.

The Defendants contend that claims against them in their individual capacities should also be dismissed.  The Defendants base their argument on Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) and Luder v. Endicott, 253 F.3d 1020, 1023 (7th Cir. 2001).  In Pennhurst, the Supreme Court stated that "a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."  Id.  The Seventh Circuit repeated this statement in Luder, but it then went on to say that "[i]ndirect effects are not enough; otherwise the practical necessity for a state to compensate an employee for bearing liability risks would place individual-capacity suits under the bar of the Eleventh Amendment."  253 F.3d at 1023.

The Defendants argue that Garcia's claims should be barred because they would interfere with public administration and a judgment would restrain the state and its operations. The Defendants do not explain how any interference would occur and or what restraints might be suffered. Unsurprisingly, they offer no legal authority to support the application of Eleventh Amendment immunity to such circumstance.

This is not to say authority is lacking as to this matter. The issue was discussed in <u>Hafer v. Melo</u>, 502 U.S. 21, 26-27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). There, 18 individuals sued a newly-elected state official under § 1983 after they were fired. The official asserted that the claims were barred because she acted in her official capacity. The Court rejected the official's argument that the Eleventh Amendment barred personal capacity claims against state officials in federal court. In light of <u>Hafer</u>, the Defendants' attempt to dismiss Garcia's personal capacity claims must fail.

As a final matter with regard to jurisdictional problems, Count XIII must also be dismissed. In Count XIII, Garcia alleges that the ISP

11

violated Illinois' "clear public policy" when it fired her for reporting violations of federal and Illinois law. As stated earlier, a suit against the ISP is for intents and purposes a suit against the state. See Will, 491 U.S. 58, 64-71; Hearne, 185 F.3d at 776. The Eleventh Amendment, therefore, bars this claim and requires its dismissal.

### B. Rule 12(b)(6) Issues

Count VI of Garcia's complaint alleges a Fourteenth Amendment due process claim against Defendants Weitzel, Helton, Severino, Wilham, and Willman. Because Garcia has only alleged that Commander Weitzel and Trooper Helton participated in the termination proceedings, her claim can only proceed as to them. See Doe, 327 F.3d at 526.

That being said, a procedural due process claim is a two-part inquiry consisting of: "(1) whether the defendants deprived the plaintiffs of a constitutionally protected liberty or property interest; and (2) if so, whether that deprivation occurred without due process of law." See Doe v. Heck, 327 F.3d 492, 526 (7th Cir. 2003) (citing Zinermon v. Burch,

12

494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Garcia has withdrawn her due process claim as it relates to a constitutionally protected property interest. See Pl.'s Opp. to Defs.' Partial Mot. to Dis (d/e 27) at p. 10. This leaves Garcia to complain about damage to her reputation. Courts have explained that procedural due process does not protect against injury to reputation alone because reputation is neither "liberty" nor "property." See Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Atwell v. Lisle Park Dist., 286 F.3d 987, 992-93 (7th Cir. 2002). A procedural due process claim is simply the wrong mechanism for redress. Pleva v. Norquist, 195 F.3d 905, 916 (7th Cir. 1999). Thus, the Court will dismiss Count VI.

Count VII of Garcia's complaint alleges that Defendants Weitzel, Helton, Severino, Wilham, and Willman retaliated against her because she exercised her First Amendment rights. In order to state a First Amendment retaliation claim, a complaint must allege that (1) the speech in which the plaintiff engaged was constitutionally protected under the circumstances, and (2) the defendants retaliated against her because of it.

13

See Barkoo v. Melby, 901 F.2d 613, 617 (7th Cir. 1990).

Garcia alleges she was terminated because she complained about disparate treatment of cadets and hazing and because she requested Equal Employment Opportunity counseling. The Defendants contend that Garcia's complaints were merely personal concerns rather than constitutionally protected public concerns. Issues relating to police training implicate police protection and public safety and both of these areas are generally matters of public concern. See Auriemma v. Rice, 910 F.2d 1449, 1460 (7th Cir. 1990) (*en banc*); Glass v. Dachel, 2 F.3d 733, 741 (7th Cir. 1993) (same). By alleging that the Defendants were government actors who terminated her because she commented on matters relating to police protection and public safety, Garcia has stated a First Amendment claim under § 1983. Thus, the Court will not dismiss Count VII insofar as it alleges claims against the Defendants in their individual capacities[2].

---

[2] It is highly doubtful that all of the Defendants—commander and instructors alike—terminated Garcia. However, a complaint need not specify which actions were committed by which defendants. Such issues are appropriately parsed during summary judgment.

Count VIII of Garcia's complaint alleges that Defendants Weitzel, Helton, Severino, Wilham, and Willman's discriminated against her because of her race and national origin.  These allegations implicate the Fourteenth Amendment's equal protection clause.  To state an equal protection claim under § 1983, a plaintiff must allege that the defendants were acting under the color of state law and that their conduct violated her constitutionally protected rights.  See Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 471 (7th Cir. 1997).

An equal protection claim may only be brought against those responsible for the deprivation of rights.  See Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001).  Because the doctrine of *respondeat superior* is inapplicable to such a claim, a plaintiff must instead allege personal involvement by each defendant in the wrongdoing.  Id. citing Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001).  A plaintiff can establish supervisory liability by showing that a defendant, with knowledge of a subordinate's conduct, approved of the conduct and the basis for it.  Lanigan, 110 F.3d at 477.  Alternatively, a plaintiff may

15

plead that the injuries were the result of an official governmental policy or custom. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Garcia has alleged that the Defendants discriminated against her on the basis of race and national origin by making comments such as "you are not the right profile" for an ISP trooper. Garcia contends that this and other comments like it were known to and approved by all the Defendants. It is not clear that each Defendant had some policymaking authority and that the behavior of the Defendants represented an improper departmental custom pursuant to Monell. This issue and the extent of each Defendant's personal involvement should be examined at summary judgment stage. At this stage, however, Garcia's allegations suffice to state a claims against the Defendants in their individual capacities.

Count IX of Garcia's complaint alleges a § 1983 claim based on the defamation she allegedly suffered from Weitzel, Helton, Severino, Wilham, and Willman. Garcia contends that the Defendants' conduct

deprived her of her Fourteenth Amendment liberty interest by adversely affecting her ability to secure future employment.

The courts have found a deprivation of liberty when an employee is fired for a publicly announced reason that impugned the employee's moral character.  See Lawson v. Sheriff of Tippecanoe County, Ind., 725 F.2d 1136, 1138 (7th Cir. 1984) (citations omitted).  The Defendants argue that Garcia's claim fails because "there is no allegation that any of the information of which [Garcia] complains was ever disseminated to a single person outside the ISP."  See Def.s' Partial Mot. to Dis. (d/e 22) at p. 12.

Unlike code-pleading, the Federal Rules of Civil Procedure do not require complaints to lay out facts corresponding to every "element" of a legal theory.  See Simpson v. Nickel, 450 F.3d 303, 305-06 (7th Cir. 2006).  Under the Federal Rules, "one pleads 'claims' (which is to say, grievances) rather than legal theories and factual specifics."  Id. (citations omitted).  Other than a claim for fraud, a plaintiff need not allege factual or legal elements to state a claim.  Id.  Count IX's claim against the

17

Defendants in their individual capacities is a Fourteenth Amendment claim and it cannot be dismissed because it does not include a legal element. However, the parties may revisit this issue on summary judgment.

Count X of Garcia's complaint alleges a 42 U.S.C. § 1981 claim based on alleged racial and national origin discrimination she suffered from Weitzel, Helton, Severino, Wilham, and Willman. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, as is enjoyed by white citizens . . . " and defines making and enforcing of contracts as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. To establish a § 1981 claim, Garcia must show that (1) she is a member of a racial minority; (2) the Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. See Pourghoraishi v. Flying J, Inc.,

449 F.3d 751, 756 (7th Cir. 2006).

Garcia has alleged all three of these elements. The fact that she was an at-will employee is of no moment. Section 1981 applies to at-will employees such as Garcia. See Walker v. Abbott Laboratories, 340 F.3d 471, 478 (7th Cir. 2003). Thus, the Court will not dismiss Count X's claims against the Defendants in their individual capacities.

## CONCLUSION

The Court dismisses Counts VII, VIII, IX, and X's claims against the Defendants in their official capacities. The Court dismisses Counts V, VI and XIII in their entirety. The Court also warns Garcia that it expects much better briefing in the future. The lack of legal authority, poor organization, and incomplete analysis demonstrated throughout her last submission (d/e 27) will not be tolerated in the future.

Ergo, the Defendants' Partial Motion to Dismiss (d/e 21) is ALLOWED IN PART AND DENIED IN PART. The Court DISMISSES Counts VII, VIII, IX, and X insofar as those claims allege claims against the Defendants in their official capacities. Counts V, VI

and XIII are DISMISSED in their entirety.

IT IS SO ORDERED.

ENTER: July 31, 2006

FOR THE COURT: s/ Richard Mills
United States District Court